111 Ill. App.3d 604 (1982)
444 N.E.2d 644
In re CUSTODY OF BOBBY KRAUSE (Donald Byrnes, Appellant,
v.
Robert Krause, Appellee).
No. 82-754.
Illinois Appellate Court  First District (5th Division).
Opinion filed December 23, 1982.
Stanley F. Kaplan, P.C., of Chicago (Stanley F. Kaplan and Claire Adair, *605 of counsel), for appellant.
George B. Collins, of Collins & Amos, of Chicago, for appellee.
Order affirmed.
JUSTICE MEJDA delivered the opinion of the court:
Separate petitions for custody of a nine-year-old boy were filed by Donald Byrnes, his stepfather, and by Robert Krause, his natural father, following the death of his mother to whom his custody had been awarded in an earlier judgment of divorce. The trial court awarded custody to the natural father. The stepfather appeals.
The sole issue presented is whether the circuit court's decision awarding custody of Bobby Krause to Robert Krause, his natural father, was contrary to the manifest weight of the evidence and was an abuse of discretion.
Robert (hereinafter Krause) and Marie Krause were married in 1967. They had one child, Bobby, born in 1972. Marie filed suit for divorce in June 1973 but, in order to maintain health insurance coverage for Marie, the divorce was not finalized until February 1976. Marie had custody of Bobby prior to the divorce and was awarded custody in the divorce judgment although the court made a specific finding that Krause was "a fit person" to have custody of Bobby.
Donald Byrnes (hereinafter Byrnes) and Marie began dating in late 1973 when Bobby was about 16 months old. In 1975, when Bobby was three years old, Byrnes and Marie rented an apartment where they lived together with Bobby. Byrnes and Marie were married in the spring of 1976, shortly after Marie's divorce was final. Byrnes participated in child-care activities from the time Bobby was 16 months old, and later attended parent-teacher conferences and Little League games and involved Bobby in Cub Scouts and in Byrnes' church. Byrnes is employed as a district manager for a publishing company and is required to travel three days of the month. He owns a home in Northbrook, Illinois. Marie and Byrnes had a daughter, Katie, born in 1980. Marie's mother has been the babysitter for Bobby and Katie since the recurrence of Marie's illness in 1981. She testified that she will continue that arrangement if Byrnes is awarded custody of Bobby.
Until Bobby was about 3 1/2 years old, Krause visited him twice a month for approximately two hours at a time. After the divorce judgment was entered in 1976, Krause saw Bobby every weekend, usually all day Saturday. Krause and Bobby often spent their time together on activities related to pets and animals, interests they share. Krause did not attend Bobby's Little League games or parent-teacher conferences *606 and did not take Bobby to church services on weekends of visitation. Krause testified that the timing and length of his visits were controlled by Marie and that the extent of his participation in Bobby's activities often reflected his desire to cooperate with her regarding Bobby's upbringing. Krause continued paying child support and alimony to Marie until her death and made support payments until he obtained custody of Bobby.
Krause has remarried. He and his wife have a daughter and, at the time of trial, were expecting another child. They reside in their own home located on 13 acres in Wayne, Illinois. Mrs. Krause is not employed outside the home. Krause is employed by a chain of 20 pet stores which he owns with other members of his family.
After Marie's death in August 1981, both Byrnes and Krause petitioned for custody of Bobby. At trial, the foregoing evidence was presented, along with the testimony of Dr. Leonard Elkun, a licensed psychiatrist. Dr. Elkun interviewed Byrnes and Bobby approximately two months after Marie's death but did not interview Krause. On direct examination, in response to a hypothetical modeled after the facts presented herein, Dr. Elkun testified that at that time a change of custody or change of environment would be "completely unconscionable and absolutely contraindicated." When questioned on cross-examination about the relationship between Bobby and Krause, Dr. Elkun said, "There was absolutely no animosity, and I found nothing to suggest that Mr. Krause was in any way contraindicated as an adequate or decent individual. And the child cares about him and cares for him."
When questioned, Bobby said that he wanted to stay in Northbrook with Byrnes and visit Krause on weekends. He said that he had friends in Northbrook and elsewhere, that he gets along "pretty good" with Krause's wife, and that he does not feel shy with Krause but is more comfortable with Byrnes.
On March 30, 1982, the court awarded custody of Bobby to Krause. Byrnes appeals.

OPINION
The sole issue raised in this appeal is whether the award of custody to Krause was contrary to the manifest weight of the evidence and was an abuse of discretion. Although it is accepted in Illinois courts that a natural parent has a superior right to the custody of his or her minor child as against a claim made by a nonparent (Eaton v. Eaton (1977), 50 Ill. App.3d 306, 365 N.E.2d 647), that right is not absolute and must yield to the best interest of the child. (Giacopelli v. *607 Florence Crittenton Home (1959), 16 Ill.2d 556, 158 N.E.2d 613.) The superior right of the natural parent serves only as one of several factors used by the courts in resolving the ultimately controlling question of where the best interests of the child lie. In re Custody of Townsend (1981), 86 Ill.2d 502, 427 N.E.2d 1231; In re Custody of Piccirilli (1980), 88 Ill. App.3d 621, 410 N.E.2d 1086.
 1 In determining the best interest of the child, the court must consider the particular facts and circumstances of each case. (People ex rel. Edwards v. Livingston (1969), 42 Ill.2d 201, 247 N.E.2d 417; Eaton.) Section 602(a) of the Illinois Marriage and Dissolution of Marriage Act directs the court to consider all relevant factors in a child-custody determination and lists six such factors. (Ill. Rev. Stat. 1981, ch. 40, par. 602(a).) Subsection (1) thereof states that the wishes of the child's parent or parents as to his custody is one of the relevant factors. The evidence shows clearly that Bobby's natural father wishes to have custody of his son.
Subsection (2) directs the court to consider the wishes of the child as to his custodian. Although Bobby stated that he would rather stay with Byrnes and only visit Krause on the weekends, we find that the record shows that Bobby was expressing a preference for his life to continue as it had been. It would not be unusual for a nine-year-old boy who has recently undergone the death of his mother to want his life to continue in a familiar pattern. Although Bobby's stated preference is for Byrnes as custodian, the evidence shows that Bobby wants to continue visitation with Krause and enjoys a good relationship with him.
The third factor listed for consideration, subsection (3), is the interaction and interrelationship of the child with his parent or parents, siblings, and any other person who may significantly affect his best interest. The record shows that Bobby has a good relationship with both Byrnes and Krause. He calls both men "Dad" and believes that they both love him. Since his mother's death, Bobby's nuclear family has consisted of Byrnes and Katie. In addition, since 1981 Bobby has had almost daily contact with his maternal grandmother. The record shows that Bobby plays with Katie and also helps take care of her and that Byrnes and Bobby are involved in many activities together. Bobby is also an integral part of the Krause family. He has visited Krause regularly throughout his childhood, usually spending a whole day with him and, sometimes, a weekend. Krause's wife, Linda, has known Bobby all of his life. Bobby gets along well with Linda and with Lisa, Linda and Krause's daughter. Bobby stated that he believes Linda loves him. Although Krause is not involved in Bobby's organized *608 activities, they share many interests and often spend their time together on outdoor activities and sports. We conclude that Bobby's interaction with members of both families is very good.
Subsection (4) lists the child's adjustment to his home, school and community as a relevant factor for consideration. Although Bobby stated that he prefers to stay in Northbrook because that's where many of his friends are, weekly visits to Krause's home have enabled him to familiarize himself with that community. Although Bobby prefers the more familiar environment where he has lived for most of his life, nothing in the record indicates that Bobby would not be equally comfortable in Krause's community.
Subsection (5) directs the court to consider the mental and physical health of all the individuals involved. The only evidence on this issue, in addition to the court's own observations of the parties and witnesses, was the testimony of Dr. Elkun. Dr. Elkun recommended against a change of custody and environment for a nine-year-old child who had lost his mother two months earlier. The doctor advised maintaining as much stability as possible in the child's life, where there has already been a major disruption. Although avoiding further disruption in the child's life may be desirable, we note that our standard, the best interest of the child, requires an appraisal which considers the long-term effects of certain actions upon the situation of the child. The short-term remedy of maintaining the child's present situation does not necessarily meet this standard.
Subsection (6) was not considered as there were no allegations or threats of physical violence in the instant case.
In custody cases the trial court is vested with great discretion because it has the superior opportunity to observe the witnesses, evaluate the evidence, and determine the best interests of the child. (Cebrzynski v. Cebrzynski (1978), 63 Ill. App.3d 66, 379 N.E.2d 713.) The trial court's determination of custody will not be reversed unless it has clearly abused its discretion or the decision was contrary to the manifest weight of the evidence. (In re Custody of Piccirilli (1980), 88 Ill. App.3d 621, 410 N.E.2d 1086; Cebrzynski.) It is our opinion that the decision of the trial court is not contrary to the manifest weight of the evidence and is not an abuse of discretion.
Byrnes argues that the court's order represents an abuse of discretion and cites cases wherein custody of a minor child or children was awarded to a third party over the claim of a natural parent. (In re Adoption of Markham (1981), 91 Ill. App.3d 1122, 414 N.E.2d 1351; Lloyd v. Lloyd (1980), 92 Ill. App.3d 124, 415 N.E.2d 1105; In re Custody of Piccirilli; Cebrzynski.) We note that in each of these *609 cases the court properly considered all the relevant factors and based its decision on what would serve the best interests of the child or children involved. The fact that one of the parties seeking custody was the child's natural parent was only one of the factors considered; it was not controlling. In the instant case the court considered all the relevant factors and found that an award of custody to the natural father was in the best interests of the child. This finding is supported by the evidence and is not an abuse of discretion.
In a custody dispute a court should give great weight to the claim of a third person who has had actual or legal custody of the child for a substantial period of time, especially if the evidence shows that the child has become an integral member of a true family unit. (In re Custody of Townsend (1981), 86 Ill.2d 502, 427 N.E.2d 1231; In re Custody of Piccirilli (1980), 88 Ill. App.3d 621, 410 N.E.2d 1086.) In Townsend, the Illinois Supreme Court stated, however, that although this may be an important factor, it does not rise to the level of a presumption so as to neutralize the superior right doctrine and does not transfer the superior right from the natural parent to the third person. Prior long-term actual or legal custody is not controlling; it remains simply a factor to consider in ascertaining what will best serve the interests of the child. By virtue of his relationship with Marie, Byrnes had actual custody of Bobby for most of his life. This is not controlling, however, but is only one of the factors to be considered in determining what will serve Bobby's best interests.
We disagree with Byrnes' contention that the court gave improper consideration to the superior right doctrine in awarding Bobby's custody to his natural father. A careful review of the record and briefs reveals that such award comports with the best interest of the child standard, which standard is the law of Illinois. See Ill. Rev. Stat. 1981, ch. 40, par. 602(a).
 2 The law presumes that it is in the best interest of a child to be raised by the natural parent. (Lloyd v. Lloyd (1980), 92 Ill. App.3d 124, 415 N.E.2d 1105; In re Custody of Piccirilli (1980), 88 Ill. App.3d 621, 410 N.E.2d 1086.) Ordinarily the right of a natural parent will prevail over the claim of a third party where both parties are equally fit. The record shows that Bobby was raised in a home wherein he received a great deal of attention and affection. The record also shows that Krause was a conscientious father, despite the fact that he lived apart from his son. It is our opinion that the decision of the lower court awarding custody of Bobby to his natural father is well supported by the evidence.
Appellant Byrnes has filed a motion in this court requesting that *610 a portion of appellee's brief relating to an alleged violation of constitutional rights be stricken for the reason that the issues were first raised on appeal. The motion was taken with the case for decision. Because we affirm the ruling of the lower court on the basis of its factual determination, we do not reach the constitutional issues. We note, however, that constitutional issues not presented to the trial court cannot be raised initially on appeal. (In re Adoption of McFadyen (1982), 108 Ill. App.3d 329.) Therefore, we dismiss the motion as moot.
For the reasons stated, the order of the trial court is affirmed.
Motion dismissed; order affirmed.
LORENZ and WILSON, JJ., concur.