851 N.E.2d 881 (2006)
In re CUSTODY OF T.W., A Minor
Tom W. Weger and Cindy Weger, Petitioners-Appellees,
v.
Misty D. Weger, Respondent, and Todd Smith, Respondent-Appellant.
No. 5-06-0019.
Appellate Court of Illinois, Fifth District.
June 19, 2006.
*882 James D. Stout, Law Offices of James D. Stout, Bridgeport, for Appellant.
William K. Thomas, Thomas & Lane, Robinson, for Appellees.
Justice GOLDENHERSH delivered the opinion of the court:
Petitioners, Tom W. Weger and Cindy Weger, filed a petition for the custody of their granddaughter, T.W., under the custody provisions of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/601 et seq. (West 2004)). The circuit court of Crawford County *883 granted the petition and awarded petitioners the custody of T.W. On appeal, T.W.'s father, respondent Todd Smith, raises these issues: (1) whether the award of custody violated his due process rights in light of the recent opinion in In re R.L.S., 218 Ill.2d 428, 300 Ill.Dec. 350, 844 N.E.2d 22 (2006), and (2) whether the trial court erred in finding that it was in the best interest of the child to award custody to petitioners. We affirm.

FACTS
On January 13, 2005, petitioners filed a petition for a change of custody regarding their granddaughter T.W. T.W. was born on January 22, 1999. Respondent and Misty D. Weger (T.W.'s mother) were never married. Petitioners are the parents of T.W.'s mother.
Petitioners alleged that T.W.'s mother voluntarily surrendered physical custody of T.W. to them in November 2002 and that T.W. has not been in the physical custody of either parent for more than two years. Respondent filed a response to the petition and also filed a counterpetition for a change of custody. T.W.'s mother filed an entry of appearance consenting to the award of the care and custody of T.W. to petitioners.
The court conducted a bench trial. In addition to testifying on their own behalf, petitioners and respondent presented testimony from several witnesses. The trial court found that T.W. and her mother had lived with her maternal grandparents for the first year and a half of her life. During a period of close to a year, when T.W. was approximately two years old, she and her mother lived at another residence. After this period, T.W. returned to reside with petitioners. T.W. has resided with petitioners since November 2002.
The court noted that respondent did not acknowledge paternity until the Illinois Attorney General instituted an action to obtain child support. The court stated that for approximately two years, respondent had visited with T.W. on a regular schedule of a part of one day on alternate weekends. Respondent had married and recently purchased a new home with three bedrooms. The court noted that respondent's wife was pregnant at the time of the underlying proceeding.
The court found that petitioners had met their burden of showing good cause to overcome the superior rights of respondent. The court described the superior-rights doctrine, upon which it based its decision:
"The parties agree that the standard to be applied in the court's decision is the determination of the best interests of [T.W.] However, as [r]espondent points out, there is a presumption that it is in the child's best interest to be raised by a natural parent. In re Custody of Townsend, 86 Ill.2d 502[, 56 Ill.Dec. 685], 427 N.E.2d 1231 (1981); In re Custody [sic] of Rudsell, 291 Ill.App.3d 626[, 225 Ill.Dec. 736], 684 N.E.2d 421 (4th Dist., 1998 [sic]). A third party seeking custody has the burden of showing good reason to supersede the parent's `superior rights'. In re Guardianship of Alexander O., 336 Ill.App.3d 325[, 270 Ill.Dec. 711], 783 N.E.2d 673 (2nd Dist., 2003). Case law also shows, however, that this superior right is not absolute, Alexander O. ibid. [sic], and serves as only one factor in determining where the best interest of the child lays [sic]. Montgomery v. Roudez, 156 Ill. App.3d 262[, 108 Ill.Dec. 803], 509 N.E.2d 499 (First Dist., 1987); In re Custody of Walters, 174 Ill.App.3d 949[, 124 Ill.Dec. 488], 529 N.E.2d 308 (Third Dist., 1988)."
The court found that under the factors set forth in the Marriage Act, T.W.'s best *884 interests would be served by awarding custody to petitioners. Respondent appeals.

ANALYSIS
Respondent bases his appeal on In re R.L.S., 218 Ill.2d 428, 300 Ill.Dec. 350, 844 N.E.2d 22 (February 2, 2006), which was published after the trial court in this case issued its decision. In In re R.L.S., the Illinois Supreme Court addressed the constitutionality of a section of the Probate Act of 1975 (Probate Act) (755 ILCS 5/11-1 et seq. (West 2004)). A review of In re R.L.S. reveals that the supreme court was addressing the safeguards provided in the Probate Act and not setting a benchmark for standards under the Marriage Act.
In In re R.L.S., maternal grandparents petitioned for the guardianship of their minor granddaughter under the Probate Act. R.L.S.'s parents had been separated, and R.L.S. had been living with her mother and maternal great-grandmother at the time her mother died in an automobile accident. The respondent moved to dismiss the petition on the grounds that the petitioners lacked standing. In re R.L.S., 218 Ill.2d at 431, 300 Ill.Dec. 350, 844 N.E.2d at 25.
The trial court initially denied the motion, finding that under section 11-5(b) of the Probate Act (755 ILCS 5/11-5(b) (West 2004)), the petitioners could establish standing if they could rebut the presumption that the respondent was willing and able to take care of R.L.S. on a daily basis. In re R.L.S., 218 Ill.2d at 431, 300 Ill.Dec. 350, 844 N.E.2d at 25. The court then reversed its decision after determining that the petitioners were also required to meet the standing requirements of the Marriage Act. The trial court's decision was based on a line of cases that held that the standing requirement of the Marriage Act was incorporated into the Probate Act by the mutual application of the superior-rights doctrine. The superior-rights doctrine establishes a presumption that parents have the superior right to the care and custody of their children. In re R.L.S., 218 Ill.2d at 432, 300 Ill.Dec. 350, 844 N.E.2d at 26 (citing In re Custody of Peterson, 112 Ill.2d 48, 51, 96 Ill.Dec. 690, 491 N.E.2d 1150, 1151 (1986)). The appellate court reversed and remanded. The supreme court affirmed the appellate court.
On appeal, the respondent argued that the standing requirement of the Marriage Act should be read into the Probate Act. In re R.L.S., 218 Ill.2d at 433-34, 300 Ill.Dec. 350, 844 N.E.2d at 26. The supreme court began its analysis by discussing the cases relied on by the respondent. In re Person & Estate of Newsome, 173 Ill.App.3d 376, 379, 123 Ill.Dec. 61, 527 N.E.2d 524, 525 (1988) (Newsome); In re Marriage of Haslett, 257 Ill.App.3d 999, 1006, 195 Ill.Dec. 874, 629 N.E.2d 182, 187 (1994); In re Person & Estate of Barnhart, 232 Ill.App.3d 317, 320, 174 Ill.Dec. 26, 597 N.E.2d 1238, 1240 (1992). The court focused on Newsome. Newsome was premised on the superior rights of parents to the custody and control of their children. The Probate Act explicitly recognizes the doctrine in section 11-7, which states in part that "`[i]f * * * the surviving parent is competent to transact his own business and is a fit person, he is'" entitled to the custody of his child. In re R.L.S., 218 Ill.2d at 434, 300 Ill.Dec. 350, 844 N.E.2d at 27 (quoting 755 ILCS 5/11-7 (West 2004)). The Marriage Act also recognizes the superior rights of parents, in the standing requirement that a custody proceeding may be commenced by a nonparent "`by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents.'" In re R.L.S., 218 Ill.2d at *885 434, 300 Ill.Dec. 350, 844 N.E.2d at 27 (quoting 750 ILCS 5/601(b)(2) (West 2004)). Newsome and the other precedent relied on by the respondent held that the incorporation of the superior-rights doctrine in both acts meant that a petitioner under the Probate Act was also required to meet the standing requirement of the Marriage Act. Newsome, 173 Ill.App.3d at 379, 123 Ill.Dec. 61, 527 N.E.2d at 525.
In re R.L.S. noted that after Newsome was decided, section 11-5(b) of the Probate Act was amended to add a standing requirement. In re R.L.S., 218 Ill.2d at 435, 300 Ill.Dec. 350, 844 N.E.2d at 27. The amended section 11-5(b) provides that a court lacks jurisdiction to proceed on a guardianship petition if the minor has a parent whose whereabouts are known, who is willing and able to make child-care decisions, and who objects to the petition. 755 ILCS 5/11-5(b) (West 2004). In re R.L.S. found that, with this amendment, the legislature had created a standing requirement for nonparents under the Probate Act to take the place of the incorporated provisions of the Marriage Act. In re R.L.S., 218 Ill.2d at 434, 300 Ill.Dec. 350, 844 N.E.2d at 27. The court stated:
"Thus, to have standing to proceed on a petition for custody under the Marriage Act, a petitioner must show that the child is not in the physical custody of one of his or her parents. 750 ILCS 5/601(b)(2) (West 2004); [In re Custody of] Peterson, 112 Ill.2d at 52[, 96 Ill. Dec. 690, 491 N.E.2d at 1152]. To have standing to proceed on a petition for guardianship under the Probate Act, when the minor has a parent whose whereabouts are known, the petitioner must rebut the statutory presumption that the parent is `willing and able to make and carry out day-to-day child[-]care decisions concerning the minor.' 755 ILCS 5/11-5(b) (West 2004); see [In re Estate of] Johnson, 284 Ill. App.3d [1080,] 1091[, 220 Ill.Dec. 474, 673 N.E.2d 386, 393 (1996)]. It is presumed that, when enacting new legislation, the legislature acts with full knowledge of previous judicial decisions addressing the subject matter of that legislation. People v. Jones, 214 Ill.2d 187, 199[, 291 Ill.Dec. 663, 824 N.E.2d 239, 246] (2005). By enacting a standing requirement for guardianship petitioners after the courts had held that the proper standing requirement was that stated in the Marriage Act, the legislature made its intention clear. Regardless of whether Newsome was correct when decided, it is clearly not correct now, as the legislature has added a standing requirement to the Probate Act." In re R.L.S., 218 Ill.2d at 436, 300 Ill.Dec. 350, 844 N.E.2d at 28.
After finding that Newsome was no longer valid, the court proceeded to address the respondent's argument that incorporation was necessary to protect his constitutional rights. The court described the issue as follows:
"Respondent maintains, nevertheless, that the Newsome court's reading of the Probate Act is necessary to preserve the Act's constitutionality. Respondent contends that, unless guardianship petitioners under the Probate Act are required to show that the child is not in the physical custody of one of his parents, the Probate Act violates the parents' due process rights." (Emphasis added.) In re R.L.S., 218 Ill.2d at 437, 300 Ill.Dec. 350, 844 N.E.2d at 28.
The respondent in In re R.L.S. based his due process argument on Troxel v. Granville, 530 U.S. 57, 60, 120 S.Ct. 2054, 2057, 147 L.Ed.2d 49, 53 (2000). In Troxel, the Supreme Court found unconstitutional a Washington state statute that authorized a court to grant visitation whenever "`visitation *886 may serve the best interest of the child.'" Troxel, 530 U.S. at 60, 120 S.Ct. at 2057, 147 L.Ed.2d at 53 (quoting Wash. Rev.Code § 26.10.160(3) (1994)). The Court found that the statute violated the due process clause of the fourteenth amendment, and the Court noted that the liberty interest of parents in the custody of their children is "perhaps the oldest of the fundamental liberty interests recognized by [the] Court." Troxel, 530 U.S. at 65, 120 S.Ct. at 2060, 147 L.Ed.2d at 56. The first problem the Troxel Court found with the Washington statute was that it allowed any person to petition for visitation at any time. The In re R.L.S. court discussed the second problem the Court had found with the Washington statute:
"The second major problem identified by the Supreme Court in Troxel was the manner in which the statute was applied to a parent who had not been found unfit. Fit parents are presumed to act in the best interests of their children, but the trial court in Troxel applied the opposite presumption. It required a parent to disprove that visitation with the petitioners was in the child's best interests. By applying the statute in this manner, the trial court `failed to provide any protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters.' Troxel, 530 U.S. at 70, 120 S.Ct. at 2062, 147 L.Ed.2d at 59.
Such a problem should never arise in a guardianship proceeding under the Probate Act. Section 11-7 specifically protects the custody rights of fit parents. The first sentence of this section provides that if both parents are living, fit, and competent to transact their own business, they are entitled to custody. The next sentence provides that if one parent is deceased, then the surviving parent, if fit and competent to transact his or her own business, is entitled to custody. Respondent, as R.L.S.'s surviving parent, is thus entitled to custody if he is a fit person and competent to transact his own business." (Emphasis in original.) In re R.L.S., 218 Ill.2d at 442, 300 Ill.Dec. 350, 844 N.E.2d at 31.
The court found that the plain language of section 11-7 of the Probate Act called for fit parents to have the custody of their children. The court noted that some ambiguity is created by the last sentence of section 11-7, which states that "`[i]f the parents live apart, the court for good reason may award the custody and education of the minor to either parent or to some other person.'" In re R.L.S., 218 Ill.2d at 442, 300 Ill.Dec. 350, 844 N.E.2d at 31 (quoting 755 ILCS 5/11-7 (West 2004)). The appellate court had held that this allowed custody to be awarded to some person other than a parent if good reason was shown. In re R.L.S., 354 Ill.App.3d 462, 467, 290 Ill.Dec. 134, 820 N.E.2d 1201, 1205 (2004). The supreme court disagreed with the appellate court on this point. The supreme court held that this phrase cannot be read out of context with respect to the preceding sentences in section 11-7. In re R.L.S., 218 Ill.2d at 443, 300 Ill.Dec. 350, 844 N.E.2d at 32. The first sentence of section 11-7 provides that if both parents are fit, they are entitled to the custody of their children. The second sentence provides that if one parent is dead and the other parent is fit, the surviving parent is entitled to custody. When the last sentence is read in the context of the rest of section 11-7, it becomes apparent that awarding guardianship to "some other person" under the Probate Act is appropriate only if the child does not have a fit parent. In re R.L.S., 218 Ill.2d at 443-44, 300 Ill.Dec. 350, 844 N.E.2d at 32. The court stated:
"It is implicit in the first two sentences of section 11-7 that the court may award *887 custody to some other person if the child lacks a fit parent. Further, in a situation in which both parents are fit and live apart, the court cannot rely on the superior[-]rights doctrine because both parents start out on equal footing. In re Custody of Townsend, 86 Ill.2d 502, 509[, 56 Ill.Dec. 685, 427 N.E.2d 1231, 1235] (1981). In such a situation, the court would have to rely on `good reason' or the best interests of the child in determining which parent should be awarded custody. Thus, as properly construed, section 11-7 provides that fit parents are entitled to custody." In re R.L.S., 218 Ill.2d at 443-44, 300 Ill.Dec. 350, 844 N.E.2d at 32.
In re R.L.S. then proceeded to discuss how courts had previously misinterpreted section 11-7 of the Probate Act. The court criticized previous cases for failing to apply section 11-7 as written. In re R.L.S., 218 Ill.2d at 444, 300 Ill.Dec. 350, 844 N.E.2d at 32 (citing In re Petition of Kirchner, 164 Ill.2d 468, 484-85, 208 Ill.Dec. 268, 649 N.E.2d 324, 332 (1995) (Kirchner); In re Estate of Whittington, 107 Ill.2d 169, 177, 90 Ill.Dec. 892, 483 N.E.2d 210, 215 (1985); In re Custody of Townsend, 86 Ill.2d at 508, 56 Ill.Dec. 685, 427 N.E.2d at 1234; and People ex rel. Edwards v. Livingston, 42 Ill.2d 201, 209-10, 247 N.E.2d 417, 422 (1969)). In re R.L.S. used Kirchner as a looking glass on flawed interpretation. Kirchner involved a dispute under the Adoption Act (750 ILCS 50/0.01 et seq. (West 1992)). The prospective adoptive parents attempted to rely on Probate Act cases. The Kirchner court stated that unlike the statutory language of the Adoption Act there was no requirement of unfitness under the Probate Act. In re R.L.S., 218 Ill.2d at 445, 300 Ill.Dec. 350, 844 N.E.2d at 33 (citing Kirchner, 164 Ill.2d at 484-85, 208 Ill.Dec. 268, 649 N.E.2d at 332).
In re R.L.S. criticized Kirchner. First, the court stated that Kirchner had improperly asserted that at least one parent must be deceased in order for a petition to be filed under the Probate Act. Second, In re R.L.S. pointed out that Kirchner, and the case cited by Kirchner, had improperly interpreted the plain language of section 11-7. In re R.L.S., 218 Ill.2d at 446-47, 300 Ill.Dec. 350, 844 N.E.2d at 33-34 (citing Kirchner, 164 Ill.2d at 484-85, 208 Ill.Dec. 268, 649 N.E.2d at 332; and Livingston, 42 Ill.2d at 209-10, 247 N.E.2d at 422). Section 11-7 requires a finding of unfitness before some person other than a parent may be awarded custody. In re R.L.S., 218 Ill.2d at 446, 300 Ill.Dec. 350, 844 N.E.2d at 33. In re R.L.S. also criticized Kirchner's reliance on Livingston. In re R.L.S. found that the interpretation of the Probate Act in Livingston was problematic because Livingston had relied on Giacopelli v. The Florence Crittenton Home, 16 Ill.2d 556, 158 N.E.2d 613 (1959), a case Kirchner had found to be unconstitutional. In re R.L.S., 218 Ill.2d at 446-47, 300 Ill.Dec. 350, 844 N.E.2d at 34.
Finally, In re R.L.S. pointed out that Kirchner had ignored the fact that the standing requirement of section 11-5(b) provided additional safeguards for the due process rights of parents. The court concluded:
"This court's cases refusing to apply section 11-7 as written are wrong and should no longer be followed. Section 11-7 means what it says: fit parents are entitled to custody. The Probate Act, as properly construed, protects the due process rights of fit parents and does not suffer from the same constitutional infirmities as the Washington statute considered in Troxel." In re R.L.S., 218 Ill.2d at 447-48, 300 Ill.Dec. 350, 844 N.E.2d at 34.
*888 Respondent contends that In re R.L.S. holds that substantive due process mandates that custody must always be awarded to a parent if he is fit. In re R.L.S. makes no such pronouncement. In re R.L.S. holds that fit parents are entitled to custody under the Probate Act. This means the Probate Act contains the constitutional safeguards called for in Troxel. That holding is of limited relevance to the case at hand, which involves a petition under the Marriage Act.
Respondent asserts that In re R.L.S. represents a fundamental sea change in Illinois jurisprudence. Respondent misinterprets In re R.L.S. In re R.L.S. interpreted the Probate Act. The respondent in In re R.L.S. first argued that the Marriage Act was incorporated into the Probate Act by the mutual use of the superior-rights doctrine. This argument is intertwined with the second issue in In re R.L.S. After the first argument was rejected, the respondent argued that the Probate Act would violate his due process rights without the incorporation of the standing requirement of the Marriage Act. The court described the issue of unconstitutionality:
"[The respondent] is merely arguing that due process requires reading this section in conjunction with section 601(b)(2) of the Marriage Act [(750 ILCS 5/601(b)(2) (West 2004))] and applying the latter to proceedings under both the Probate Act and the Marriage Act." In re R.L.S., 218 Ill.2d at 438, 300 Ill.Dec. 350, 844 N.E.2d at 29.
In re R.L.S. found that the Probate Act, sans incorporation, passed constitutional muster. In re R.L.S. did not announce a new benchmark for protecting parents' rights.
The court in In re R.L.S. appears to have assumed that the standing requirements of the Marriage Act protect the due process rights of parents. The respondent in In re R.L.S. argued that the incorporation of the standing requirements of the Marriage Act was necessary to protect his constitutional rights. The court rejected this argument by implying that the incorporation of the standing requirements of the Marriage Act would protect parental rights but that incorporation was not necessary. The court pointedly contrasted the Probate Act with the Marriage Act, stating, for instance:
"We disagree with respondent's assertion that the Probate Act, when not read in conjunction with section 601(b)(2) of the Marriage Act, suffers from the same infirmities identified by the courts in Troxel and Wickham [v. Byrne, 199 Ill.2d 309, 320, 263 Ill.Dec. 799, 769 N.E.2d 1, 8 (2002)]." (Emphasis added.) In re R.L.S., 218 Ill.2d at 440, 300 Ill.Dec. 350, 844 N.E.2d at 30.
Respondent asserts that In re R.L.S. "expressly abrogated all previous cases that adhered to the rule that the superior rights of fit natural parents were necessarily subservient to the best interests of the child." A look at In re R.L.S., however, reveals that when criticizing precedent, the court was addressing the operation of the Probate Act. In re R.L.S., 218 Ill.2d at 444, 300 Ill.Dec. 350, 844 N.E.2d at 32 (citing Kirchner, 164 Ill.2d at 484-85, 208 Ill.Dec. 268, 649 N.E.2d at 332; In re Estate of Whittington, 107 Ill.2d at 177, 90 Ill.Dec. 892, 483 N.E.2d at 215; In re Custody of Townsend, 86 Ill.2d at 508, 56 Ill.Dec. 685, 427 N.E.2d at 1234; and Livingston, 42 Ill.2d at 209-10, 247 N.E.2d at 422). The problem with these cases was that they were based on the assumption "`the Probate Act does not statutorily mandate a finding of unfitness as a condition precedent to divesting a parent of custody.'" In re R.L.S., 218 Ill.2d at 446, 300 Ill.Dec. 350, 844 N.E.2d at 33 (quoting Kirchner, *889 164 Ill.2d at 484-85, 208 Ill.Dec. 268, 649 N.E.2d at 332).
In re R.L.S.'s limitation to the Probate Act becomes exceptionally clear when viewed in light of other recent statements regarding the operation of the superior-rights doctrine. For example, the precedents criticized in In re R.L.S. have recently been used to address the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 et seq. (West 2004)). Shortly before In re R.L.S. was decided, the supreme court had cited to Livingston for the proposition that "[u]nder certain circumstances `it is not necessary that the natural parent be found unfit or be found to have legally forfeited his rights to custody, if it is in the best interest of the child that he be placed in the custody of someone other than the natural parent.'" In re Austin W., 214 Ill.2d 31, 51, 291 Ill.Dec. 280, 823 N.E.2d 572, 584 (2005) (quoting Livingston, 42 Ill.2d at 209, 247 N.E.2d at 421). In re R.L.S.'s limitation to the Probate Act explains why the court saw no need to address this recent Juvenile Court Act precedent. Subsequent to In re R.L.S., the Fourth District Appellate Court stated that under the Juvenile Court Act a court need not find a natural parent to be unfit before awarding custody to another person, but the court must follow other procedural requirements of the Juvenile Court Act. In re S.J., 364 Ill.App.3d 432, 442, 301 Ill.Dec. 308, 846 N.E.2d 633, 641 (2006); see 705 ILCS 405/2-28 (West 2004). Similar to its irrelevance to the Juvenile Court Act, In re R.L.S. does not call into doubt the safeguards provided by the Marriage Act.
The statutory framework of the Marriage Act ensures that the due process rights of parents are not violated. The protection afforded by standing requirements has been explicitly recognized on several occasions after the issuance of Troxel. In re Marriage of Archibald, 363 Ill.App.3d 725, 736, 300 Ill.Dec. 188, 843 N.E.2d 446, 456 (2006); Connor v. Velinda C., 356 Ill.App.3d 315, 323, 292 Ill.Dec. 829, 826 N.E.2d 1265, 1271 (2005); In re Custody of Ayala, 344 Ill.App.3d 574, 588, 279 Ill.Dec. 456, 800 N.E.2d 524, 538 (2003); In re A.W.J., 197 Ill.2d 492, 496, 259 Ill. Dec. 392, 758 N.E.2d 800, 803 (2001). Earlier this year, we addressed this safeguard:
"Standing, in the context of child custody, means that the court must initially conclude that a nonparent has the custody of the minor. In re Custody of Groff, 332 Ill.App.3d [1108,] 1112[, 266 Ill.Dec. 387, 774 N.E.2d 826, 830 (2002)]. This standing requirement is designed to safeguard a natural parent's superior right to the care and custody of his or her children. In re A.W.J., 197 Ill.2d at 497[, 259 Ill.Dec. 392, 758 N.E.2d at 803].
To a nonparent seeking custody, the issue of standing is critical. If the nonparent cannot establish standing, then he or she must plead and prove that the parents are unfit to have custody of the child. In re Marriage of Sechrest, 202 Ill.App.3d 865, 870[, 148 Ill.Dec. 615, 560 N.E.2d 1212, 1215] (1990)." In re Marriage of Archibald, 363 Ill.App.3d at 736, 300 Ill.Dec. 188, 843 N.E.2d at 456.
Respondent contends that even if In re R.L.S. did not change the law for determining custody, the trial court's decision was not supported by the record. Respondent argues that the record does not support a finding that the best interests of the child were served by awarding custody to petitioners. The trial court is in the best position to evaluate the credibility of the witnesses and weigh the evidence. In re Wanstreet, 364 Ill.App.3d 729, 734, 301 Ill.Dec. 706, 847 N.E.2d 716, 720 (2006). Thus, the trial court's determination of the *890 best interest of the minor will not be reversed unless it is against the manifest weight of the evidence or the court clearly abuses its discretion. Connor, 356 Ill. App.3d at 323, 292 Ill.Dec. 829, 826 N.E.2d at 1271-72. A finding is only against the manifest weight of the evidence when an opposite finding is clearly evident. In re Marriage of Knoche, 322 Ill.App.3d 297, 307, 255 Ill.Dec. 716, 750 N.E.2d 297, 305 (2001).
The evidence supports the trial court's finding. In a detailed letter opinion, the trial court described the weight given to evidence presented at the trial. The trial court found support for the conclusion that T.W. has a very close relationship with petitioners and that T.W. displayed a preference for petitioners. The trial court also stressed that T.W. was well adjusted to living with petitioners, because she had lived with them for six of the seven years of her life. These facts support the trial court's award. See In re Marriage of Dafoe, 324 Ill.App.3d 254, 260, 257 Ill.Dec. 761, 754 N.E.2d 419, 424 (2001).
In child custody disputes, there is a presumption that a natural parent's right to custody is superior to a claim by a third person. In re Marriage of Dafoe, 324 Ill.App.3d at 259, 257 Ill.Dec. 761, 754 N.E.2d at 423; see In re Custody of Walters, 174 Ill.App.3d 949, 953, 124 Ill.Dec. 488, 529 N.E.2d 308, 311 (1988); In re Adoption of E.L., 315 Ill.App.3d 137, 157, 248 Ill.Dec. 171, 733 N.E.2d 846, 862 (2000). Respondent incorrectly asserts that the trial court ignored this presumption. The trial court concluded:
"For the reasons set forth above, the court finds [p]etitioners have shown good cause to overcome the presumption that custody for the father would be in [T.W.'s] best interest and that the best interests of [T.W.] would be served by awarding custody to [p]etitioners."
In the end, respondent asks us to do the corollary of what was rejected in In re R.L.S. In re R.L.S. held that the standing requirements of the Marriage Act did not have to be incorporated into the Probate Act in order to protect the due process rights of a parent. In this case, we find that the Probate Act does not have to be incorporated into the Marriage Act in order to protect the rights of a natural parent. The Marriage Act does not call for, and this case is not an example of, intrusive micromanaging by the state. See Wickham v. Byrne, 199 Ill.2d 309, 320, 263 Ill.Dec. 799, 769 N.E.2d 1, 8 (2002).

CONCLUSION
Accordingly, the judgment of the circuit court of Crawford County is hereby affirmed.
Affirmed.
SPOMER, P.J., and McGLYNN, J., concur.