**Ella Van NESIBA and Bobbie Nesiba**

v.

**Toby TAYLOR \*.**

Supreme Judicial Court of Maine.

Argued May 5, 1981.

Decided Aug. 21, 1981.

---

\* This case was docketed in Superior Court, sitting as the Supreme Court of Probate, under the caption "Toby Taylor v. Ella Van Nesiba and Bobbie Nesiba." Although Taylor was appellant in Superior Court, the Nesibas were the original petitioners. Their names should have appeared first in the caption in all courts.

Silsby & Silsby, Leigh A. Ingalls (orally), William S. Silsby, Jr., Ellsworth, for petitioners.

Roger G. Chagnon (orally), Salisbury Cove, for respondent.

Before McKUSICK, C. J., and WERNICK, GODFREY, ROBERTS and CARTER, JJ.

GODFREY, Justice.

On June 19, 1979, Bobbie and Ella Nesiba filed in Probate Court petitions to adopt Mrs. Nesiba's two children from her former marriage to Toby Taylor and to have the children's surnames changed from Taylor to Nesiba. Besides alleging their own abilities to care for the children, the Nesibas claimed that Toby Taylor, the children's natural father, had not "seen, communicated with, or supported said [children] over the past several years."

When the Nesibas filed their petitions, the necessity for obtaining the natural[1] parent's consent to adoption was controlled by 19 M.R.S.A. § 532 (1964), as last amended by P.L. 1979, ch. 325.[2] However, the parties agreed that the case in Probate Court would be governed by P.L. 1979, ch. 391, repealing and replacing 19 M.R.S.A. § 532, effective September 14, shortly before the Probate Court hearing.[3]

---

1. Through this opinion, the term "natural parent" signifies the divorced natural parent who may object to the adoption of his children by the current husband or wife of his former spouse.

2. At the time the Nesibas filed their petitions, 19 M.R.S.A. § 532 provided, in pertinent part:
Before such petition is granted, written consent to such adoption must be given by the child, if of the age of 14 years, and by each of his living parents, if not hopelessly mentally ill or intemperate; or, when a divorce has been decreed to either parent, written con-

sent of the parent or the Department of Health and Welfare, whichever is entitled to the custody of the child, ... or such consent by one parent when, after such notice to the other parent as the judge deems proper and practicable, such other parent is considered by the judge unfit to have the custody of the child.

3. As amended by P.L. 1979, ch. 391, 19 M.R.S.A. § 532 provided, in pertinent part:
1. *Consent required.* Before any adoption is granted, written consent to the adoption

After notice to Taylor and an evidentiary hearing in which Taylor appeared through counsel, the Probate Judge granted the Nesibas' petitions. Although Taylor had objected to the adoption, the Probate Judge ruled that Taylor's consent was unnecessary because he had been "shown to be unwilling or unable to undertake parental responsibility."

Taylor appealed the Probate Court decree to the Superior Court sitting as the Supreme Court of Probate. The only issue to be litigated on the trial *de novo* in Superior Court was whether Taylor's consent was a prerequisite to granting the Nesibas' adoption petitions. Between the time Taylor filed his appeal and the time of the trial *de novo* in September of 1980, 19 M.R.S.A. § 532, as replaced by P.L. 1979, ch. 391, was again amended by P.L. 1979, ch. 733, § 9, effective July 3, 1980.[4] However, the parties agreed that the provisions of P.L. 1979, ch. 391 would continue to apply to the proceedings and argued to the Superior Court that P.L. 1979, ch. 733 should not be given retroactive effect.

> must be given by the child, if he is at least 14 years old, and by each of his living parents, except as provided in subsection 2.
>
> 2. *Consent not required.* Consent to adoption shall not be required of the following:
>
> A. A parent who has been adjudged, after notice and hearing, to:
>
> (1) Have willfully abandoned the child; or
> (2) Be unwilling or unable to undertake parental responsibility . . . .

**4.** P.L. 1979, ch. 733, § 9 provides, in pertinent part:

> 1. *Consent required.* Before any adoption is granted, written consent to the adoption must be given by
>
> A. The child, if he is at least 14 years old;
> B. Each of the child's living parents; except as provided in subsection 2; . . .
>
> 2. *Consent not required.* Consent to adoption shall not be required of the following:
>
> A. A parent who has been adjudged, before the effective date of this Act, and after notice and hearing, to:

After the trial *de novo*, the Superior Court issued its judgment on November 7, 1980. In the presiding justice's view, the case hinged on a determination of what statute should be applied in the Supreme Court of Probate. The critical language of P.L. 1979, ch. 391 provided that consent to adoption shall not be required of a parent who has been adjudged after a notice and a hearing to be unwilling or unable to undertake parental responsibility.[5] The then latest amendment of 19 M.R.S.A. § 532, namely P.L. 1979, ch. 733, § 9 provided:

> Consent to adoption shall not be required of the following:
>
> A. A parent who had been adjudged, before the effective date of this Act, and after notice and hearing, to:
>
> .    .    .    .    .
>
> (2) Be unwilling or unable to undertake parental responsibility
>
> A–1. A parent whose parental rights have been terminated under Title 22, section 4051, *et seq.*[6]
>
> > (1) Have willfully abandoned the child; or
> > (2) Be unwilling or unable to undertake parental responsibility;
> >
> > A–1. A parent whose parental rights have been terminated under Title 22, section 4051, *et seq.* . . .

**5.** For text of the pertinent provisions of ch. 391 see n. 3 *supra.*

**6.** 22 M.R.S.A. §§ 4051–4057 (Supp.1980–81) form the subchapter of the "Child and Family Services and Child Protection Act" that provides for termination of parental rights. Section 4055 of that subchapter sets forth the standards for terminating such rights:

> 1. *Grounds.* The court may order termination of parental rights if:
>
> A. Custody has been removed from the parent under:
>
> .    .    .    .    .
>
> (2) Title 19, section 752 [providing for awards of custody in divorce decrees] . . . and
>
> B. Either:
> (1) The parent consents to the termination. Consent shall be written and voluntarily and

The presiding justice regarded P.L. 1979, ch. 733, § 9, as a procedural rather than a substantive amendment to the consent-to-adoption statute. Accordingly, the justice concluded that the new amendment was applicable to the Superior Court proceedings notwithstanding the parties' agreement to the contrary. Because Taylor's appeal to the Superior Court vacated the Probate Court's decree, the justice reasoned that there had been no operative judgment that Taylor was an unfit parent prior to July 3, 1980, the effective date of P.L. 1979, ch. 733, § 9. Neither had Taylor's parental rights been terminated under 22 M.R.S.A. § 4051 *et seq.* Therefore, the presiding justice concluded, there were no circumstances obviating the necessity of Taylor's consent to the Nesibas' adoption petitions. Because Taylor objected to the adoption, the Nesibas' petitions could not be granted.

■ On appeal the Nesibas concede that if P.L. 1979, ch. 733, § 9 represented merely a change in the procedure for determining when the natural parent's consent to adoption is needed, that amendment could be applied to the Superior Court proceeding even though their petitions were filed before the amendment became effective. However, the Nesibas argue that P.L. 1979, ch. 733, § 9 constituted, in effect, an enlargement of the substantive rights of the divorced natural parent who objects to the adoption of his children by the new spouse of the other natural parent. Because that statute changes the legal significance of acts occurring before its effective date, the Nesibas assert that it should not have been applied in the Supreme Court of Probate. Taylor responds that the new amendment merely altered the quantum of evidence necessary to terminate the natural parent's right to bar adoption. While we agree that P.L. 1979, ch. 733, § 9 had the effect of

knowingly executed in court before a judge. The judge shall explain the effects of a termination order; or

(2) The court finds, based on clear and convincing evidence, that:

increasing the adoptive parent's burden of proving the natural parent's unfitness, we cannot characterize that increase as a mere change of procedure.

Under P.L. 1979, ch. 391, the statute applied in Probate Court, the natural parent's consent to the adoption was unnecessary if that parent had been shown either to have "willfully abandoned the child" or to be "unwilling or unable to undertake parental responsibility." Those standards continue to apply under P.L. 1979, ch. 733, § 9 only if an adjudication applying those standards was made before the effective date of the new amendment. Absent such a prior adjudication, the adopting parent carries a burden of proving a level of unfitness in the natural parent that is substantively greater than is required under P.L. 1979, ch. 391.

Subparagraph A–1 of P.L. 1979, ch. 733, § 9 incorporates by reference the standards for terminating parental rights under 22 M.R.S.A. § 4051 *et seq.* The latter statutes form subchapter 6 of the "Child and Family Services and Child Protection Act." Under 22 M.R.S.A. § 4055(1)(B)(2), the need for a natural parent's written consent to the adoption is obviated only where the adopting parent shows by "clear and convincing evidence" that

(a) The [natural] parent is unwilling or unable to protect the child from jeopardy;

(b) The circumstances are unlikely to change in a reasonable time; and

(c) Termination is in the best interests of the child.

"Jeopardy" is defined to include "serious abuse or neglect, as evidenced by: A. Serious harm or threat of serious harm; [or] B. Deprivation of adequate food, clothing,

(a) The parent is unwilling or unable to protect the child from jeopardy;
(b) The circumstances are unlikely to change in a reasonable time; and
(c) Termination is in the best interests of the child.

shelter, supervision or care, including health care when that deprivation causes a threat of serious harm ...." 22 M.R.S.A. § 4002(6). In turn, "serious harm" is defined as "A. Serious injury; B. Serious mental injury or impairment, evidenced by severe anxiety, depression or withdrawal, untoward aggressive behavior or similar serious dysfunctional behavior; or C. Sexual abuse or exploitation." 22 M.R.S.A. § 4002(10). Finally, "serious injury" is defined as "serious physical injury or impairment." 22 M.R.S.A. § 4002(11).

Without question, P.L. 1979, ch. 733, § 9 substantially increased the adopting parent's burden of proving circumstances that make the natural parent's consent to adoption unnecessary. Not only must the adopting parent show that the other is incapable or unwilling to protect the child from serious physical or psychological injury, but he must also show that that unfitness is unlikely to change within a reasonable time and that termination of the natural parent's rights to the child is in the child's best interest. By increasing the adopting parent's burden of proof, the legislature has substantially expanded the range of nonfeasance that will yet permit the natural parent to forestall adoption by withholding his consent. To the same extent the legislature has reduced the adopting parent's ability to adopt the child free from a need to obtain the natural parent's permission. This shift in the balance between the rights of the adopting parent and the natural parent who objects to the adoption may alter the legal consequences of the parties' acts occurring before the adoption petitions were filed. Consequently, P.L. 1979, ch. 733, § 9 should not have been applied in a proceeding begun before

its effective date. *See, e. g., Dobson v. Quinn Freight Lines, Inc.*, Me., 415 A.2d 814, 816 (1980); *Coates v. Maine Employment Security Comm'n*, Me., 406 A.2d 94 (1979).

Because the Supreme Court of Probate erroneously applied P.L. 1979, ch. 733, § 9 to the pending proceeding, we must vacate that court's judgment. Because the Superior Court can no longer have jurisdiction of this case as the Supreme Court of Probate,[7] we remand the case to Probate Court for trial under the standards set forth in P.L. 1979, ch. 391. The case must be retried in the Probate Court because no record was made in that court of the previous hearing, which at that time was subject to a *de novo* trial of the facts in the Supreme Court of Probate.[8]

The entry is:

Appeal sustained.

Judgment of the Superior Court vacated; case remanded to Probate Court for proceedings consistent with the opinion herein.

All concurring.

7. The Maine Probate Code, P.L. 1979, ch. 540, § 1, became effective on January 1, 1981. Section 1–308 of the Code abolished the Superior Court's former jurisdiction as the Supreme Court of Probate. We may not merely affirm the original judgment of the Probate Court, for that judgment was effectively vacated by Taylor's appeal to the former Supreme Court of

Probate. *See In re Bich Thi Nguyen*, Me., 407 A.2d 1122 (1979).

8. On remand, the original Probate Court adjudication is not available as a basis to obviate the consent requirement. That adjudication was vacated by the *de novo* appeal to the then-existing Supreme Court of Probate.