(text box: 1)
 NO. 5-99-0806

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

In re
 MARRIAGE OF ) Appeal from the

MARGARETA E. DAFOE, ) Circuit Court of

 ) St. Clair County.  

Petitioner-Appellee, )

and )

)

RONALD A. DAFOE, JR., )

)

Respondent-Appellant. )

----------------------------------------------------------) Nos. 91-D-1349 & 95-P-15

In re
 ESTATE OF NICHOLAS SCOTT )

DAFOE, a Minor )

)

(John and Ursula Klapetzky, ) Honorable

) Robert J. Hillebrand, 

Respondents-Appellees).   ) Judge, presiding.  

___________________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:

Margareta E. Dafoe and Ronald A. Dafoe, Jr., were married on June 5, 1990.  Their only child, Nicholas, was born on May 19, 1991.  The marriage was dissolved on January 17, 1992, in cause No. 91-D-1349.  At that time, both the mother and the father were active in the military, and the parties agreed that the mother would have sole custody of Nicholas.  After the divorce, Nicholas and his mother lived in South Carolina for approximately four months and then returned to Illinois and lived with the mother's parents, Nicholas's grandparents, John and Ursula Klapetzky.  Except for a few brief periods in 1991 and 1992, Nicholas and his mother resided in Mascoutah with the grandparents.  In January 1995 the mother moved to Texas; however, Nicholas remained with the grandparents in Mascoutah.  On February 17, 1995, the grandparents, with the written consent of the mother, were appointed guardians of Nicholas in cause No. 95-P-15. 

The father moved to upstate New York after he received his military discharge.  He had little contact with Nicholas over the years and did not object to the grandparents being appointed guardians.  In fact, during Nicholas's first five years, the father barely saw Nicholas.  In 1992 the father only had Nicholas for a weekend.  He did not see Nicholas again until the spring of 1994.  He next saw Nicholas in November 1996.  On March 26, 1997, the father filed a petition to modify custody and terminate guardianship.  After that, he saw his son for two weeks in June 1997 and again at Christmas time in 1997.  He married his second wife on May 31, 1997, and they later had a son.  The father's new wife was instrumental in the father's decision to seek custody and has been extremely supportive.  Over the years, the father usually paid $300 per month in child support as originally agreed upon in the divorce decree.  However, there were months when the payment was not made or the checks bounced and had to be resubmitted for payment.  The father failed to pay any of Nicholas's medical bills even though he had agreed to do so as part of the dissolution agreement.  

The divorce case, No. 91-D-1349, and the guardianship case, No. 95-P-15, were consolidated on the father's motion.  Discovery ensued in the matter.  Both private and court-appointed mental health experts filed reports.  After a three-day trial, the trial court entered an order that stated in pertinent part as follows:

"B.  That it was the burden of proof of the grandparents, JOHN and URSULA KLAPETZKY, to overcome the superior right of the natural parent, RONALD DAFOE, with regard to the custody of the minor child, NICHOLAS DAFOE.

C.  That the factors the Court weighed most heavily in making its determination herein were:

a) The minor child has for all, but a few months, of his life lived with the Additional Respondents, JOHN and URSULA KLAPETZKY, and has been integrated into a stable, loving environment.

b) The minor child has special needs and difficulties, diagnosed in part as ADHD, which require a high degree of stability above and beyond normal parameters and which have been, and currently are better, met by the grandparents."

The trial court found that the grandparents overcame the presumption in favor of the father and met their burden of proof, and the court awarded sole custody to the grandparents.  The trial court noted, 
inter alia
, that it was in the best interest of Nicholas that his relationship with his mother and father continue to be as close as possible.  The court, therefore, granted the mother visitation during the school year, as agreed upon with the grandparents, and granted the father visitation, which included 10 weeks in the summer, as well as whenever the father is in the Mascoutah area, provided that he give the grandparents reasonable telephone notice.  Both the mother and the father were ordered to pay child support, and the grandparents were ordered to maintain health insurance for Nicholas.  Additional facts necessary for an understanding of our determination herein will be discussed in the analysis portion of our opinion.  

In this 
pro se
 appeal, the father asks us to reverse the award of custody to the grandparents, to remand the matter to the trial court with directions to award custody to the father, and to revise the visitation and financial components of the judgment.  The father is adamant that the trial court applied the wrong burden of proof.  The mother has not filed a brief, but she concurs with the brief filed by the grandparents and notes that she agrees with the trial court's judgment granting custody to the grandparents.  In this appeal, an order was entered, on our own motion, granting the father 10 days to show cause why the reports of proceedings that were filed out of time and without leave of court should not be stricken.  The father has shown just cause, and therefore, we refuse to strike the reports of proceedings, and we consider these reports as a part of the record below.  The grandparents have filed a motion to strike the argument section of the father's brief and a motion to strike the statement of facts of the father's brief.  This court ordered that these motions be taken with the case.  This court now denies both motions.  

For the following reasons, we affirm.

ANALYSIS

The father cites to 
Troxel v. Granville
, 530 U.S. 57, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000), in support of his proposition that a third-party nonparent, such as the grandparents herein, must meet a "substantially heightened burden of proof" in order to be entitled to an award of custody.  The 
Troxel
 court pointed out that the due process clause "includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.' "  
Troxel
, 530 U.S. at 65, 147 L. Ed. 2d at 56, 120 S. Ct. at 2059-60 (quoting 
Washington v. Glucksberg
, 521 U.S. 702, 720, 138 L. Ed. 2d 772, 787, 117 S. Ct. 2258, 2267 (1997)). The father argues that 
Troxel 
"casts a new light upon the strength of the constitutional rights of a natural parent" and that, as a fit natural parent, he was constitutionally entitled to custody.  

The father also relies on 
Lulay v. Lulay
, 193 Ill. 2d 455, 739 N.E.2d 521 (2000), in which the Illinois Supreme Court, relying on 
Troxel
, found section 607(b)(1) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/607(b)(1) (West 1998)) unconstitutional as applied to the facts of that case.  In 
Lulay
, the parents were divorced and had joint custody of their three minor children.  The paternal grandmother filed a petition pursuant to section 607(b)(1) of the Act, seeking visitation with her three grandchildren.  Both parents agreed that they did not want the paternal grandmother to have visitation, and they filed a motion to dismiss the petition.  
Lulay
, 193 Ill. 2d at 458, 739 N.E.2d at 523.  Our supreme court agreed with the parents that section 607(b)(1), as applied to the facts of the case, was an unconstitutional infringement on the parents' fundamental liberty interest in raising their children.  
Lulay
, 193 Ill. 2d at 479-80, 739 N.E.2d at 534.  The 
Lulay
 court explained as follows:

"[W]e cannot allow the state to use its power to impose its judgment that visitation may be better for the grandchildren over the joint decision of two fit parents who have determined that the visitation should not occur.  The facts of this case do not warrant the state's interference with the parents' joint decision regarding who may have visitation privileges with their children.  To allow such interference would unconstitutionally infringe on the parents' well-established fundamental liberty interest in making decisions regarding the upbringing of their children."  193 Ill. 2d at 479, 739 N.E.2d at 534.

Lulay
 did not address the issue of whether section 607(b)(1) of the Act was unconstitutional on its face, but the court determined only that it was unconstitutional as applied to the facts of the case before it.  
Lulay
 was a fact-driven case and, in our estimation, has little relevance to the instant case.

In fact, both 
Troxel
 and 
Lulay
 are inapplicable to the instant case because those cases concerned grandparental visitation.  Here, on the other hand, we are faced with a custody dispute between a natural parent (who, at the time of his divorce several years before, agreed that he would only have limited visitation with his son), his ex-wife (who was given sole custody during the dissolution proceedings but later relinquished custody to her parents), and the maternal grandparents (who virtually raised the child from the time he was four months old).  We find that the father's reliance on 
Troxel
 and 
Lulay
 is misplaced.

We recognize that the right of a natural parent to maintain a relationship with his or her child is among the liberties protected through the due process clause of the fourteenth amendment (U.S. Const., amend. XIV).  See, 
e.g.
, 
Stanley v. Illinois
, 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972).  However, we disagree with the father's contention that 
Troxel
 created a new, "substantially heightened burden of proof" in custody cases.  Here is what the father fails to recognize:  " 'Parental rights do not spring full-blown from the biological connection between parent and child.  They require relationships more enduring.' "  (Emphasis omitted.)  
Lehr v. Robertson
, 463 U.S. 248, 260, 77 L. Ed. 2d 614, 103 S. Ct. 2985, 2992 (1983) (quoting 
Caban v. Mohammed
, 441 U.S. 380, 397, 60 L. Ed. 2d 297, 99 S. Ct. 1760, 1770 (1979)).  

In child custody disputes, there is a well-established presumption that the interest of a natural parent in the care, custody, and control of their child is superior to the right or interest claimed by a third person.  
In re Custody of Townsend
, 86 Ill. 2d 502, 508, 427 N.E.2d 1231, 1234 (1981).  This presumption is, however, not absolute, but it serves as one of several factors used by a court in determining the best interests of the child.  
In re Adoption of E.L.
, 315 Ill. App. 3d 137, 157-58, 733 N.E.2d 846, 862 (2000).  It is important to note that 
E.L.
 was decided by our colleagues in the First District after 
Troxel
.  While the First District specifically mentions 
Troxel
 (
E.L.
, 315 Ill. App. 3d at 157, 733 N.E.2d at 862), it did not find that the burden of proof required in a custody case was in any way altered by 
Troxel
.  Certainly, there is a presumption in favor of the natural parent, but contrary to the father's assertions herein, a court need not find that the natural parent is unfit or has forfeited his custodial rights before the court awards custody to a third person.  
Townsend
, 86 Ill. 2d at 508, 427 N.E.2d at 1234.  Instead, in order to retain custody of a child over the superior right of the natural parent, a third party must demonstrate good cause or reason to overcome the presumption that a parent has a superior right to custody, and the third party must also show that it is in the child's best interests that the third party be awarded the care, custody, and control of the child.  
E.L.
, 315 Ill. App. 3d at 158, 733 N.E.2d at 862.  

Child custody determinations rest largely within the broad discretion of a trial court, and the trial court's discretion will not be disturbed on appeal unless the award is contrary to the manifest weight of the evidence or unless the trial court is found to have abused its discretion.  
E.L.
, 315 Ill. App. 3d at 157, 733 N.E.2d at 862.  The result reached by the trial court in a child custody case is given great deference because it, rather than the reviewing court, is in a better position to evaluate the credibility of the witnesses and the needs of the child.  
In re Lutgen
, 177 Ill. App. 3d 954, 971, 532 N.E.2d 976, 986 (1988).  In the instant case, we cannot say that the trial court abused its discretion or that the award of custody to the grandparents was against the manifest weight of the evidence.

Here, the trial court correctly noted that the burden was on the grandparents to demonstrate good cause or reason to supersede the superior right of the father to the custody of his son, Nicholas, and to show that it was in Nicholas's best interests that they retain custody of him.  The record provides more than adequate evidence to support the trial court's decision to award custody to the grandparents.  For example, Dr. Cuneo, the court-appointed psychologist who interviewed all the parties involved in this matter, opined that it would be in Nicholas's best interests if the grandparents retained guardianship and custody.  Dr. Cuneo's opinion was "based upon the psychological functioning of each party, the ability of each party to provide for Nicholas' emotional and physical well[-]being, and Nicholas' own wishes and needs."

The record reflects that Nicholas has special needs that must be addressed.  Nicholas suffers from attention deficit disorder, for which he takes Ritalin.  According to the grandparents, they were aware early on that Nicholas was developmentally delayed and needed special services.  They started having Nicholas tested when he was approximately 18 months old.  The grandparents ensured that Nicholas received the necessary special services through a preintervention program offered by the local school district.  Nicholas has been enrolled in speech class, received special services for reading, and participated in occupational therapy through the school district in order to improve his fine motor skills.  The grandmother is extremely involved with Nicholas's school and teachers.  She is now employed at Nicholas's school and does not work outside the hours Nicholas is in school.  

The father, on the other hand, has not been involved in Nicholas's education and cannot accept the realities of his son's special needs.  Dr. Cuneo reported on this matter as follows:

"While Mr. Dafoe may love his son and now wants to care for him, he does not have a very good understanding of [Nicholas's] special needs.  For example, when I asked him about the programming for his son's special needs, he stated that Nicholas has no problems physically and [he also stated:]  'Mentally–like challenged.  He has no problems.  He needs to be challenged.  He's a little bit faster than others.'  When I asked Mr. Dafoe specifically about his son's speech and language delays, he insisted[:]  'No, he doesn't have them.  He speaks like an adult.  I feel he is above average.  He picks up quick [
sic
].'  Mr. Dafoe saw no need to have his son in special classes and stated he would end this immediately.  He believes [that] whatever problems his son may have are caused by the Klapetzkys overprotecting him and babying him.  His wife, Gina, also stated that she felt that Nicholas had no special needs other than[:]  '[He] needs to learn to be a child more.  He's too serious for an eight[-]year[-]old.' "

By the time the matter came to trial in the summer of 1999, the father and his new wife, Gina, were more willing to accept the fact that Nicholas has some special needs, and they did take the time to explore what special services were available for Nicholas in their local school district; however, it is clear from the record before us that the grandparents were better suited to act in Nicholas's best interests with regard to his education and medical needs.

The grandparents have cared for Nicholas virtually all of his life.  Nicholas has bonded with them and expressed his desire to stay with them.  He has special needs that the grandparents understand and are well-equipped to handle.  While we applaud the father's efforts to attempt to assume more of his parental responsibilities, we cannot ignore the fact that for the first several years of Nicholas's life, the father was content to let the grandparents raise his son as he avoided the day-to-day responsibilities of being a parent.  The biological bond between father and son simply does not overcome the actual, developed relationship between Nicholas and his grandparents.  The evidence in the instant case was sufficient to rebut the presumption in favor of the father.  Good reason exists to supersede the superior right of the father to the custody of Nicholas.

CONCLUSION

For the foregoing reasons, we affirm in its entirety the judgment order of the circuit court of St. Clair County.

Affirmed. 

CHAPMAN, P.J., and HOPKINS, J., concur.

NO. 5-99-0806

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

In re
 MARRIAGE OF ) Appeal from the

MARGARETA E. DAFOE, ) Circuit Court of

 ) St. Clair County.  

Petitioner-Appellee, )

and )

)

RONALD A. DAFOE, JR., )

)

Respondent-Appellant. )

----------------------------------------------------------) Nos. 91-D-1349 & 95-P-15

In re
 ESTATE OF NICHOLAS SCOTT )

DAFOE, a Minor )

)

(John and Ursula Klapetzky, ) Honorable

) Robert J. Hillebrand, 

Respondents-Appellees).   ) Judge, presiding.  

___________________________________________________________________________

Opinion Filed
: August 2, 2001

___________________________________________________________________________

Justices
: Honorable Richard P. Goldenhersh, J.

Honorable Charles W. Chapman, P.J., and

Honorable Terrence J. Hopkins, J.,

Concur

___________________________________________________________________________

Attorney
 Ronald A. Dafoe, 1197 Pyrites Russell Road, Hermon, NY  13652

for
 (
pro se
)

Appellant
 

___________________________________________________________________________

Attorney
 Susan Parnell Wilson, 14 South Second Street, Belleville, IL  62220

for
 (representing John and Ursula Klapetzky)

Appellees
 Margareta E. Dafoe, 301 Fair Oaks Blvd., Apt. 1215, Euless, TX  76039

(
pro se
–adopts brief of other appellees)

___________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 08/02/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.