2009 ME 74

# GUARDIANSHIP OF JEREMIAH T.

Supreme Judicial Court of Maine.

Argued: June 17, 2009.
Decided: July 23, 2009.

Jennifer L. Eastman, Esq. (orally), William B. Devoe, Esq., Eaton Peabody, Bangor, ME, for the mother.

Kerry Clark Jordan, Esq. (orally), Griffin & Jordan, LLC, Orono, ME, for the guardians.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] The mother of Jeremiah T. appeals from a judgment entered in the Penobscot County Probate Court (*Woodcock, J.*) denying her petition to terminate the guardianship for her son obtained by the child's maternal great-grandparents. The mother argues that the Probate Court erred in: (1) failing to conclude that she has a fundamental liberty interest in parenting her child and in failing to give weight to that interest in determining the best interests of her child; (2) assigning to her the burden of proof; and (3) interpreting and applying the "best interest of the child" factors stated in 18–A M.R.S. § 5–101(1–A) (2008).

[¶ 2] Because the court, although following the currently effective statute, erroneously assigned the burden of proof to the mother rather than to the guardian and was constitutionally required to make findings concerning the mother's parental fitness before denying her petition to terminate the guardianship, we vacate the court's judgment and remand for a new hearing.

I. CASE HISTORY

[¶ 3] Jeremiah T. was born in March 2004. In December 2004, when the child was nine months old, he apparently choked on an item picked up from the floor. He was taken to the hospital where an x-ray revealed a rib fracture. The record suggests that doctors at the hospital were concerned that the fracture had occurred prior to the events that led to the child coming to the hospital.

[¶ 4] After the rib fracture was discovered, the Department of Health and Human Services was notified. The mother was allowed to take Jeremiah home from the hospital, but she subsequently agreed to release custody of the child to the mother's grandparents pending an investigation by the Department. Shortly after her grandparents took custody of the child, the mother left Maine for New Hampshire where she remained for six months. She now claims that she left the State because she believed that it would be easier to regain custody of the child from out of state.

[¶ 5] On February 7, 2005, the mother's grandmother filed a petition for appointment as guardian for the child. On February 15, 2005, the mother filed a consent, affidavit, and waiver of notice and hearing concerning the guardianship. The consent form states that, should the mother "ever wish to seek to have [the child] return to [her] custody, [she] under-

stand[s] that it would be necessary for [her] to bring a petition to terminate the guardianship." The mother stated that she believed she could revoke her consent at any time with the understanding that it would involve a court proceeding. On February 24, 2005, the court appointed the mother's grandmother as temporary guardian and subsequently appointed a guardian ad litem (GAL).

[¶ 6] On August 24, 2005, the court held a hearing on the mother's grandparents' petition for guardianship.[1] For this hearing, the mother was represented by counsel. The record indicates that the mother filed a letter with the court prior to the permanent guardianship hearing, in which the mother revoked her consent to the guardianship. However, the mother testified at the 2008 hearing that she had consented to the permanent guardianship, and admitted that, in 2005, she was not in a position to take care of the child and did not live in a safe environment.

[¶ 7] Following the hearing, the court appointed the mother's grandparents as full guardians of the child in a judgment that did not state the basis for the appointment.[2] Because the record on the basis for the appointment is unclear, we assume for purposes of this appeal that the appointment was by consent. An appointment of a guardian after a contested hearing would likely have been supported by more detailed fact-finding.

[¶ 8] After her grandparents' petition for full guardianship was granted, the mother regularly visited with the child. She and her husband of four years also engaged in a seven-month parenting course and therapy.

[¶ 9] The mother filed a petition for termination of guardianship on July 23, 2008. At the time, she was expecting a child in November 2008. Prior to the Probate Court hearing, she refused to disclose her due date to the GAL conducting a pre-hearing investigation for the court. The court held a hearing on her petition on October 20, 2008.

[¶ 10] Testimony at the hearing indicated that the mother had been deemed disabled by the Social Security Administration due to a stress-related disorder and bipolar disorder. Her husband had also qualified for disability due, at least in part, to a stress-related disorder. The mother and her husband were being treated for their stress-related disorders, and though the record suggests that they had stabi-

---

1. On August 24, 2005, the court granted a motion to amend the grandmother's February 2005 guardianship petition, adding the mother's grandfather as co-petitioner for guardianship of the child.

2. In August 2005, when the full guardianship was established, 18–A M.R.S.A. § 5–204(a)–(c) (1998) applied to provide that a court may appoint a guardian for a minor if:

(a) All parental rights of custody have been terminated or suspended by circumstance or prior court order;

(b) Each living parent whose parental rights and responsibilities have not been terminated ... consents to the guardianship and the court finds that the consent creates a condition that is in the best interest of the child; or

(c) The person ... [described in] subsection (b) [does] not consent, but the court finds by clear and convincing evidence that the person [has] failed to respond to proper notice or a living situation has been created that is at least temporarily intolerable for the child even though the living situation does not rise to the level of jeopardy required for the final termination of parental rights, and that the proposed guardian will provide a living situation that is in the best interest of the child.

Title 18–A M.R.S.A. § 5–204 was subsequently amended. See P.L. 2005, ch. 371, § 2 (effective Sept. 17, 2005). There is no indication in the record that the guardianship was based on anything other than the mother's consent.

lized with medication, stress aggravated their symptoms. The mother indicated that she and her husband planned to rely on his mother to provide respite care for the child and the new baby when things became too stressful, and that, when the mother and her husband needed time to themselves, the children would be placed with the husband's mother for the weekend.

[¶ 11] The parties stipulated, for the October 2008 hearing, that the guardians have properly cared for the child, maintained a safe, suitable, environment for him, and provided him with a number of specified educational, recreational, and social activities. At the time of the hearing, the mother lived with her husband in a two-bedroom apartment, where they had lived for two years. The GAL testified that he thought the child "would do fine with" the mother, but that he thought the child would do better with the guardians.

[¶ 12] The mother argued that the statutory section pursuant to which the guardianship of a minor may be terminated, 18–A M.R.S. § 5–212 (2008), had been amended after the mother consented to the guardianship to change the assignment of the burden of proof in a petition to terminate guardianship from the guardian to the petitioner and that the court should apply the burden of proof that existed prior to the 2005 amendment. The mother also asserted that the guardianship proceeding implicated her fundamental constitutional right to parent her child, which right could not be impaired absent proof of her unfitness as a parent.

[¶ 13] The Probate Court denied the mother's petition for termination of guardianship. The court found that, though the mother visited the child weekly at the guardians' home and all members of the family love the boy, the child had been well cared for by the guardians for four years and was settled in their home. Although the court made few other explicit findings of fact, the court noted in its judgment that the mother testified at the hearing that:

> [S]ince [she consented to the grandparents' guardianship,] she has taken an extensive parenting course, acquired stable housing, and has improved her situation to the point that she feels she should be allowed to take over care of [the child]. She stated that she is willing to work with the [guardians] as well as with her therapist and an independent counselor to transition [the child] back into her custody at a pace appropriate and comfortable for [him].

Then, stating that it had considered the thirteen factors set forth in 18–A M.R.S. § 5–101(1–A) to determine the best interests of the child, the court concluded that the mother had not proved, by a preponderance of the evidence, that termination of the guardianship was in the child's best interest. The court held that the mother's asserted fundamental liberty interest in maintaining the parent-child relationship was "not of constitutional dimension."

[¶ 14] The mother appeals from the Probate Court's judgment.

## II.  LEGAL ANALYSIS

[¶ 15] The mother makes two interrelated arguments: (1) the court erroneously assigned to her the burden of proof pursuant to 18–A M.R.S. § 5–212(d), as amended, when the court should have applied the pre-amended version of the law to place the burden of proof on the guardians; and (2) the court erred as a matter of law when it failed to consider the mother's fundamental right to parent her child in deciding whether to grant her petition to terminate the guardianship.

## A. Burden of Proof

[¶ 16] The law governing burden of proof for termination of the guardianship of a minor is stated in 18–A M.R.S. § 5–212(d).[3] When the permanent guardianship was granted, with the mother's consent, on August 24, 2005, section 5–212(d) provided:

> The court may not terminate the guardianship in the absence of the guardian's consent unless the court finds by a preponderance of the evidence that the termination is in the best interest of the ward. *The guardian has the burden of showing by a preponderance of the evidence that continuation of the guardianship is in the best interest of the ward.* If the court does not terminate the guardianship, the court may dismiss subsequent petitions for termination of the guardianship unless there has been a substantial change of circumstances.

18–A M.R.S.A. § 5–212(d) (1998) (emphasis added). Effective September 17, 2005, the sentence that assigns the burden and standard of proof was amended to provide, "The *petitioner* has the burden of showing by a preponderance of the evidence that *termination of the guardianship* is in the best interest of the ward." 18–A M.R.S. § 5–212(d) (2008) (emphasis added); *see* P.L. 2005, ch. 371, § 5 (effective Sept. 17, 2005).

[¶ 17] The court ruled that the amended version of section 5–212(d) applied to place the burden on the mother to show, by a preponderance of the evidence, that termination of the guardianship was in the child's best interest. We review de novo the trial court's conclusion as to whether a statutory amendment is applied retroactively or prospectively. *Greenvall v. Me. Mut. Fire Ins. Co.*, 2001 ME 180, ¶ 6, 788 A.2d 165, 166.

[¶ 18] We apply "the common law presumption that, absent language to the contrary, legislation affecting procedural or remedial rights should be applied retroactively, whereas legislation affecting substantive rights should be applied prospectively." *Id.* ¶ 7, 788 A.2d at 166. We also apply "the rule of statutory construction that all statutes will be considered to have a prospective operation only, unless the legislative intent to the contrary is clearly expressed or necessarily implied from the language used." *Id.* ¶ 7, 788 A.2d at 167 (quotation marks omitted). Section 5–212(d), as amended, contains no language that suggests that the Legislature intended it to have a retroactive effect.

[¶ 19] An amendment may be deemed substantive if it changes the legal significance or consequences of acts or events that occurred before the amendment's effective date. *See id.* ¶ 8, 788 A.2d at 167; *Dobson v. Quinn Freight Lines, Inc.*, 415 A.2d 814, 816 (Me.1980). The United States Supreme Court has held, in contexts other than terminations of guardianship, that the assignment of the burden of proof is a rule of substantive law, affecting the substantive aspects of a claim. *See, e.g., Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20–21, 120 S.Ct. 1951, 147

---

**3.** The burden of proof for appointment of a guardian for an adult and a petition to terminate the guardianship of an adult is addressed in separate sections of the guardianship laws. *See* 18–A M.R.S. § 5–304 (2008) (appointment); 18–A M.R.S. § 5–307 (2008) (termination). These adult guardianship provisions have been substantially amended to impose a clear and convincing evidence burden of proof upon those seeking to establish a guardianship and to require that once a petitioner establishes a prima facie case that a person subject to a guardianship is no longer incapacitated or that the guardianship is unnecessary, the person seeking to continue the guardianship must prove by clear and convincing evidence that the ward remains incapacitated and that continuation of the guardianship is necessary. P.L. 2009, ch. 349, §§ 1, 5 (effective Sept. 12, 2009).

L.Ed.2d 13 (2000) ("Given its importance to the outcome of cases, we have long held the burden of proof [is] a 'substantive' aspect of a claim".); *Dir., Office of Workers' Comp. Programs v. Greenwich Collieries,* 512 U.S. 267, 271, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994) (stating that "the assignment of the burden of proof is a rule of substantive law"); *Garrett v. Moore-McCormack Co.,* 317 U.S. 239, 249, 63 S.Ct. 246, 87 L.Ed. 239 (1942) (stating in an admiralty case that the right of the party to be free from the burden of proof "inhered in his cause of action" and "was a part of the very substance of his claim and cannot be considered a mere incident of a form of procedure").

[¶ 20] This jurisprudence indicates that the amendment to section 5–212(d), shifting the assignment of the burden of proof, is a substantive amendment. The amendment altered the legal consequence of actions the mother took before the amendment's effective date. *See Greenvall,* 2001 ME 180, ¶ 8, 788 A.2d at 167. The mother's consent to the guardianship occurred before the 2005 amendment to section 5–212(d). When the mother gave her consent, she did so under a regime that provided that, if and when she sought to terminate the guardianship and reassume responsibility for her child, she could successfully do so unless the guardians could prove, by a preponderance of the evidence, that it was in the best interest of the child to continue the guardianship.

[¶ 21] The amendment changing the burden of proof served to restrict the circumstances under which the mother could have the guardianship terminated and shifted the presumption in favor of terminating a guardianship upon petition to a presumption in favor of continuing it. *See Nesiba v. Taylor,* 433 A.2d 720, 721–24 (Me.1981) (holding that, by increasing an adoptive parent's burden of proof, and shifting the balance between the rights of adoptive parents and natural parents, the Legislature may have altered the legal consequences of prior acts, making the amendment substantive and requiring prospective application).

[¶ 22] The substantive nature of the amendment to section 5–212(d) is also indicated because the amendment implicates the fundamental, constitutionally-protected right of the mother to parent her child. "The Due Process Clause of the Fourteenth Amendment of the United States Constitution and article I, section 6–A of the Maine Constitution protect a parent's fundamental and important right to raise one's children." *In re Robert S.,* 2009 ME 18, ¶ 13, 966 A.2d 894, 897–98 (quotation marks omitted); *see also Rideout v. Riendeau,* 2000 ME 198, ¶ 18, 761 A.2d 291, 299; *In re Christmas C.,* 1998 ME 258, ¶ 9, 721 A.2d 629, 631 (stating that the Maine and United States Constitutions "are declarative of identical concepts of due process") (quotation marks omitted). A parent, "so long as [she] adequately cares for ... her children (i.e., is fit)," has a firmly-established fundamental liberty interest, protected by the Due Process Clause, to direct and control her child's upbringing. *Rideout,* 2000 ME 198, ¶ 18, 761 A.2d at 299 (quoting *Troxel v. Granville,* 530 U.S. 57, 68–69, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). A statutory amendment that affects that fundamental right, therefore, affects a substantive right.

[¶ 23] Accordingly, the 2005 amendment shifting the burden of proof to the mother affected substantive rights. The amendment should have been applied prospectively only, and the Probate Court erred in applying it to a petition for termination of the guardianship established, based on the mother's consent, prior to the effective date of the amendment. On remand, the Probate Court is to apply 18–A M.R.S.A. § 5–212(d), as effective on Au-

gust 24, 2005, to assign the burden of proof to the guardians to show that continuation of the guardianship is in the child's best interest.

## B. Fundament Rights and Issues for Hearing

[¶ 24] The mother contends that the court erred as a matter of law when, in applying section 5–212(d), it failed to consider her fundamental right to parent her child in deciding whether to grant her petition to terminate the guardianship.

[¶ 25] Once a guardianship is established, "[a]ny person interested in the welfare of a ward ... may petition for removal of a guardian on the ground that removal would be in the best interest of the ward." 18–A M.R.S. § 5–212(a) (2008). As discussed above, 18–A M.R.S.A. § 5–212(d) (1998), as effective in August 2005, provided:

> The court may not terminate the guardianship in the absence of the guardian's consent unless the court finds by a preponderance of the evidence that the termination is in the best interest of the ward. The guardian has the burden of showing by a preponderance of the evidence that continuation of the guardianship is in the best interest of the ward. If the court does not terminate the guardianship, the court may dismiss subsequent petitions for termination of the guardianship unless there has been a substantial change of circumstances.

[¶ 26] The statute indicates that the sole statutory criterion for terminating a guardianship, whether the guardianship was originally created by consent or not, is whether termination of the guardianship is in the best interest of the child. *See* 18–A M.R.S.A. § 5–212(d). At the time the mother consented to the establishment of the guardianship, the Probate Code did not define "best interest of the child." *Compare* 18–A M.R.S.A. § 5–101 (1998) *with* 18–A M.R.S. § 5–101(1–A) (2008).[4]

[¶ 27] We have generally interpreted "best interest of the child" without reference to a parent's right to parent her child. However, we have consistently recognized, absent a showing of unfitness, parents' fundamental liberty interest with respect to the care, custody, and control of their children. *See Rideout*, 2000 ME 198, ¶ 18, 761 A.2d at 299; *Osier v. Osier*, 410 A.2d 1027, 1029 (Me.1980) (recognizing that "any decision terminating or limiting the right of a parent to physical custody of his child also affects his constitutionally protected liberty interest in maintaining his familial relationship with the child"); *Danforth v. State Dep't of Health & Welfare*, 303 A.2d 794, 797 (Me.1973) (discussing the natural and fundamental rights of parents to the custody of their children).

[¶ 28] Therefore, interpreting 18–A M.R.S.A. § 5–212(d) to recognize a parent's constitutional right to the care and custody of her child, the court must, on remand, consider evidence of the mother's fitness as a parent in addition to determining whether continuation of the guardianship is in the child's best interest.[5] The

---

4. Effective September 17, 2005, after the guardianship was established with the mother's consent, 18–A M.R.S.A. § 5–101 (1998) was amended to add thirteen factors that a court "shall consider" in order to determine the "best interest of the child" for purposes of the Probate Code. 18–A M.R.S. § 5–101(1–A) (2008); P.L. 2005, ch. 371, § 1. This substantive amendment to section 5–101 does not apply retroactively to this case.

5. Having concluded that 18–A M.R.S.A. § 5–212(d) (1998) applies in this case, and that the thirteen "best interest of the child" factors set out in 18–A M.R.S. § 5–101(1–A) (2008) do not, we have no occasion to consider the mother's additional arguments concerning the constitutionality of 18–A M.R.S. § 5–212(d), as effective September 17, 2005, or whether the court erroneously applied the statutory "best interest" factors.

court is to hold a new hearing, taking new evidence, including evidence concerning the mother's current physical and emotional ability to parent the child, particularly in light of the intervening birth of another child. The guardianship must be terminated unless the guardian proves that the mother is an unfit parent for the child and that continuation of the guardianship is in the child's best interests.

The entry is:

Judgment vacated. Remanded for proceedings consistent with this opinion.