**Tracy TOURISON,\* Petitioner Below, Appellant,**

v.

**Brenda PEPPER, Carl Pepper, and Jeff R. Little, Sr., Respondents Below, Appellees.**

No. 714, 2011.

Supreme Court of Delaware.

Submitted: July 11, 2012.
Decided: Aug. 16, 2012.

---

\* This Court *sua sponte* assigned pseudonyms to the parties by Order dated January 3, 2012, pursuant to Supreme Court Rule 7(d).

Rebecca L. Trifillis, Esquire, (argued), Steen, Waehler & Schrider–Fox, LLC, Ocean View, Delaware, for Appellant.

Stephen W. Welsh, Esquire, (argued), Law Office of Edward C. Gill, P.A., Ocean View, Delaware, for Appellees.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

BERGER, Justice:

In this appeal, we consider the proper standard to apply when a fit parent petitions to rescind a guardianship. Parental rights are fundamental liberties, protected by the State and Federal Constitutions. Fit parents, therefore, are entitled to a presumption that returning their children to their care and custody is in the children's best interests. We hold that the guardianship must be terminated at the request of a fit parent unless the guardian proves, by clear and convincing evidence, that the children will suffer physical or

emotional harm if the guardianship is terminated. The Family Court found that appellant's child would not be dependent or neglected if returned to her custody. Thus, appellant is a fit parent. The Family Court also found that the child would be happy living with appellant and that there is no concern about domestic violence. Based on this record, the presumption in favor of appellant is unrebutted. Thus, appellant's petition to rescind the guardianship and her petition for custody of her son must be granted.

### Factual and Procedural Background

■ Tracy Tourison (Mother) and Jeff R. Little, Sr. (Father) were in a turbulent relationship when Jeff R. Little, II(Son) was born in January, 2005. Two months later, Mother was in a car accident, and hospitalized. As a result, the Division of Family Services (DFS) became involved in the Son's care. DFS instituted a safety plan, which included placing Son in the care of Mother's aunt, Brenda Pepper. In September, 2005, with both parents' assent, Brenda became the Son's guardian. Brenda understood that her role was temporary, and that the parents could petition to regain custody after taking parenting classes, and maintaining a stable home and steady jobs for at least six months.

Over the next three years, Mother attended counseling and worked in a restaurant. At first, she visited Son once or twice a week at Brenda's house. After a few months, Mother started having overnight and weekend visits. By the summer of 2007, Son was living with Mother and Brenda on a week on/week off basis. Father had little to no contact with Son.

In August 2008, Mother moved to Arizona with her friend, Jason Peterson. They live in a two bedroom apartment. Peterson works as a computer technician. Mother worked as a dental assistant for some period, and then she was paid to became a surrogate. Son stayed with Mother and Jason for eight weeks in the summer of 2010, and eight weeks in the spring and summer of 2011. After Mother moved to Arizona, Father started visiting Son regularly.

In October 2010, Mother filed a petition for custody of Son. Brenda and her husband opposed the motion.[1] Mother then filed a petition to rescind the guardianship and the guardians filed a petition for third-party visitation. Father was named as a respondent in Mother's pleadings, and he opposed her petitions. He did not, however, file a petition for custody. After a two day hearing, the Family Court denied Mother's petitions, and declared the guardians' petition for visitation moot. This appeal followed.

### Discussion

■ By statute, a guardianship may be modified "at any time if the child is no longer dependent or neglected, and it is in the best interests of the child to modify the order."[2] There is no controversy about the first part of the statutory analysis. The court must make a factual determination that the child is no longer dependent or neglected. To do that, the court must satisfy itself that the parent who is petitioning to rescind the guardianship has the ability and financial means to provide all the care needed to support the child's

---

1. Brenda's husband, Carl Pepper, was added as a guardian in August 2009.

2. 13 *Del. C.* § 2332(b)(2). Our courts have used this provision to decide petitions to re-

scind guardianships, as well. *Smith v. Doe,* 2008 WL 5077745 (Del.Supr.); *MG v. MB & MWG,* 2011 WL 1707208 (Del.Fam.Ct.).

physical, mental and emotional growth.[3] The burden is on the guardian to establish that the parent is unfit.[4]

■ If the first test is satisfied, however, the court may not ignore the parent's fundamental rights by simply weighing the best interest factors.[5] This Court has noted that "[p]arental rights are fundamental liberties which the law has traditionally recognized and afforded constitutional protections."[6] In *Troxel v. Granville,*[7] the United States Supreme Court, likewise, affirmed that parents have a fundamental right, protected by the Fourteenth Amendment, "to make decisions concerning the care, custody, and control of their children."[8] Accordingly, "there is a presumption that fit parents act in the best interests of their children."[9] The *Troxel* court explained:

> . . . [S]o long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

> \*       \*       \*

> [T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a "better" decision could be made.[10]

In *Troxel,* the presumption in favor of a fit parent related to decisions about visitation rights. Many jurisdictions have applied the same presumption to guardianships.[11] In deciding that the presumption must be recognized, the Colorado Supreme Court reasoned:

> An important characteristic of a guardianship by parental consent is that parents have exercised their fundamental right to place their child in the custody of another for purposes of furthering the child's best interests. Failure to accord fit parents a presumption in favor of their decision to terminate a guardianship established by parental consent would penalize their initial decision to establish the guardianship and deter parents from invoking the guardianship laws as a means to care for the child while they address significant problems that could impair the parent-child relationship or the child's development.[12]

■ This Court agrees that the *Troxel* presumption in favor of a fit parent should apply to the termination of guardianships. The next issue to consider is how that presumption operates. In *Bod-*

3.  *See:* 10 *Del. C.* § 901(8), (18).

4.  *See: In re SRB–M,* 201 P.3d 1115, 1121 (Wyo.2009).

5.  *See:* 13 *Del. C.* § 722.

6.  *Shepherd v. Clemens,* 752 A.2d 533, 541 (Del.2000); *Black v. Gray,* 540 A.2d 431 (Del. 1988).

7.  530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

8.  *Troxel v. Granville* 530 U.S. 57, 67, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

9.  *Id.* at 68, 120 S.Ct. 2054.

10.  *Id.* at 68–9, 72–3, 120 S.Ct. 2054.

11.  *See, e.g.: In re Guardianship of S.H.,* —— S.W.3d —— (Ark.2012); *In re Guardianship of Jeremiah T.,* 976 A.2d 955 (Me.2009); *In re SRB–M,* 201 P.3d 1115 (Wyo.2009); *In re Marriage of Dafoe,* 324 Ill.App.3d 254, 257 Ill.Dec. 761, 754 N.E.2d 419 (2001); *In re Guardianship of D.J.,* 682 N.W.2d 238 (Neb. 2004).

12.  *In re D.I.S.,* 249 P.3d 775, 783 (Colo.) (Citation omitted.).

*die v. Daniels,*[13] the Georgia Supreme Court held that the guardian "must prove by clear and convincing evidence that the child will suffer physical or emotional harm if custody were awarded to the biological parent. . . .[14]" The court explained that, "[b]y harm, we mean either physical harm or long-term emotional harm; we do not mean merely social or economic disadvantages."[15] We adopt this standard. It respects a parent's fundamental right to care for his or her children by making it extremely difficult for a third party to overcome a fit parent's petition to rescind a guardianship.

Applying this standard to the facts of record, it cannot be disputed that Mother should have prevailed. First, the trial court made extensive findings in support of its decision that Mother is a fit parent. Those findings are supported by the record and uncontested. Thus, the trial court should not have reached the "best interests" analysis unless the guardian established by clear and convincing evidence that termination of the guardianship would cause Son physical or emotional harm. The record reveals the opposite— that Son would be safe and happy living with his Mother. Accordingly, Mother's petition to terminate the guardianship should have been granted.

In reaching this conclusion, the Court is not unmindful of the fact that Father supported the guardians' opposition to the petition. He appeared at the hearing, and testified about his tumultuous relationship with Mother. Father opined that Son was happy with the guardians, and that he did not see the need to take any parental responsibility for Son. Father did not seek any relief from the Family Court. As a result, his views have no bearing on the petition for termination. The court determined that Mother is a fit parent and that Son would not suffer physical or emotional harm in her care. Thus, there was no basis for consideration of Father's views under a best interests analysis, because there should not have been a best interests analysis.

### Conclusion

Based on the foregoing, the judgment of the Family Court is reversed, and this matter is remanded for immediate entry of an order terminating the guardianship. This Court recognizes that the trial court considered the guardians' petition for visitation to be moot, and that the guardians may seek to be heard on that petition. As of this date, however, the Mother has sole care and custody of Son. The trial court shall enter an order to that effect and Mother shall be allowed to bring her Son to her home without delay.

---

13.  288 Ga. 143, 702 S.E.2d 172 (2010).

14.  *Id.* at 175.

15.  *Ibid.* (Quotations omitted.).