# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NORRIS P. ARTURO,[1] | § | No. 186, 2020 |
| | § | |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CS16-01729 |
| BETHANY E. GOLD, | § | Petition No. 19-09154 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: December 18, 2020
Decided: February 17, 2021
Corrected: February 19, 2021

Before **SEITZ**, Chief Justice; **TRAYNOR** and **MONTGOMERY-REEVES**, Justices.

## ORDER

Upon consideration of the opening brief and the record on appeal, it appears to the Court that:

(1) In April 2016, the appellee (the "Mother") and the appellant (the "Guardian") executed a consent agreement that awarded guardianship of the Mother's son (the "Child") to the Guardian. The Family Court entered that agreement as an order of the court in May 2016. In March 2019, the Mother filed a petition to rescind guardianship. After further proceedings, including an evidentiary

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

hearing and an interview with the Child, the Family Court entered an order rescinding the guardianship and granting sole custody and residential placement of the Child to the Mother. The Guardian has appealed. For the reasons discussed below, we affirm.

(2) The record reflects that the Mother and the Guardian began a relationship in late 2013, when the Child was an infant. In approximately March or April of 2014, they began living in the home of the Guardian's parents. The Mother and the Guardian had a child together, who was born in September 2014; that child is not a subject of these proceedings.

(3) The Mother and the Guardian separated in early 2016, and the Mother moved into her great grandmother's home. The Mother testified that she did not bring the children to live with her at that time because her great grandmother had dementia and the home was not suitable for children. Instead, the children lived with the Guardian, and the Mother visited with and provided care for them at the Guardian's parents' home. The parties agreed to the guardianship order because the Guardian was a father figure to the Child and so that the Guardian could make educational and medical decisions on the Child's behalf while the Child was living with him and his parents. The guardianship order provided that the Mother would have visitation with the Child "as the parties mutually agree."

(4)     In 2017, the Mother moved into her grandfather's home, where the children had their own bedroom and beds.  The Child had overnight visits with the Mother every Tuesday and every other weekend.  The Mother and her fiancé, who have a child together, moved into a home in November 2017, where they continued to reside at the time of the guardianship rescission hearing.  The Tuesday night and weekend visitations continued.

(5)     The Child has been diagnosed with attention deficit hyperactivity disorder and a reactive attachment disorder and has been evaluated for other possible behavioral or mental health diagnoses.  The Guardian has arranged extensive counseling and treatment for the Child and ensures that he takes his prescribed medication.  Several mental or behavioral health professionals who have worked with or are familiar with the Child testified at the hearing.  Their testimony suggested that the Mother had had minimal involvement in the Child's mental and behavioral health care at the time of the hearing.  The professional who had most recently been working with the Child indicated that it would not be detrimental to the Child to live with the Mother if she provided the same structure and stability that the Guardian had provided.

(6)     The guardianship statute establishes the standard by which the Family Court determines whether a guardianship will be rescinded.  Title 13, Section 2332(c) of the Delaware Code provides:

3

[A]n order of guardianship may be rescinded upon a judicial determination that petitioner has made a preliminary showing the guardianship is no longer necessary for the reason(s) it was established, unless:

(1) The Court finds that the guardian has established, by a preponderance of the evidence, that the child will be dependent, neglected, and/or abused in the care of the parent or parents seeking rescission; or

(2) The Court finds that the guardian has established, by clear and convincing evidence, that the child will suffer physical or emotional harm if the guardianship is terminated.[2]

(7)     Applying the statutory standard, the Family Court found that the Mother made the preliminary showing that the guardianship was no longer necessary by establishing the following:  (i) she has obtained suitable housing; (ii) the Child has been spending every other weekend and every Tuesday night with the Mother at her home; (iii) the Mother is able and willing to care for the Child full-time and to make medical decisions on the Child's behalf; and (iv) although the Mother may not have been as involved in the Child's schooling and therapy as the Guardian, she did

---

[2] 13 *Del. C.* § 2332(c).  That statute was enacted after this Court's decision in *Tourison v. Pepper*, 51 A.3d 470 (Del. 2012), which held that:

> Parental rights are fundamental liberties, protected by the State and Federal Constitutions.  Fit parents, therefore, are entitled to a presumption that returning their children to their care and custody is in the children's best interests.  We hold that the guardianship must be terminated at the request of a fit parent unless the guardian proves, by clear and convincing evidence, that the children will suffer physical or emotional harm if the guardianship is terminated.  The Family Court found that appellant's child would not be dependent or neglected if returned to her custody.  Thus, appellant is a fit parent.

*Id.* at 471-72.

not abandon the Child.[3]  The court also found that the Guardian had not established that the Child would be dependent, neglected, or abused in the Mother's care, as those terms are defined in 10 *Del. C.* § 901, or that he would suffer physical or emotional harm if the guardianship were rescinded.  The court acknowledged the care that the Guardian had provided for the Child and the relationship that had formed between them, but also recognized that the Mother, as the Child's biological parent, has a fundamental right to care for the Child if she is able to do so.[4]  The court therefore granted the Mother's petition to rescind the guardianship and awarded sole custody to the Mother.

---

[3] The Guardian suggested that the guardianship order was necessary because the Mother abandoned the Child.  The Family Court rejected that conclusion, and we find that there was sufficient evidence in the record to support the Family Court's determination.  The record reflects that the Mother remained involved in the Child's life and care, and the Mother is entitled to a presumption that she consented to the guardianship with the Child's best interests in mind.  *Cf. In re D.I.S.*, 249 P.3d 775, 783 (Colo. 2011) ("An important characteristic of a guardianship by parental consent is that parents have exercised their fundamental right to place their child in the custody of another for purposes of furthering the child's best interests.  Failure to accord fit parents a presumption in favor of their decision to terminate a guardianship established by parental consent would penalize their initial decision to establish the guardianship and deter parents from invoking the guardianship laws as a means to care for the child while they address significant problems that could impair the parent-child relationship or the child's development." (quoted in *Tourison*, 51 A.3d at 473) (citation omitted)).

[4] *See Tourison*, 51 A.3d at 473 ("This Court has noted that parental rights are fundamental liberties which the law has traditionally recognized and afforded constitutional protections. In *Troxel v. Granville*, [530 U.S. 57, 66 (2000)], the United States Supreme Court, likewise, affirmed that parents have a fundamental right, protected by the Fourteenth Amendment, 'to make decisions concerning the care, custody, and control of their children.'" (internal quotation and alteration omitted)).

(8) On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[5] We will not disturb the Family Court's rulings on appeal if the court's findings of fact are sufficiently supported by the record and its explanations, deductions, and inferences are the product of an orderly and logical reasoning process.[6] We review legal rulings *de novo*.[7] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[8] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[9]

(9) After careful consideration of the Guardian's position and the record on appeal, we conclude that the judgment of the Family Court should be affirmed on the basis of the Family Court's order dated May 26, 2020. The Family Court applied the correct legal standard for rescission of a guardianship, and its findings of fact are sufficiently supported by the record.

(10) The Guardian argues that the Family Court erred by finding that "[the Guardian] failed to make a preliminary showing that the minor child will be dependent, neglected or abused in Mother's care."[10] That argument misstates the

[5] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).
[6] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).
[7] *Id.*
[8] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).
[9] *Dawson v. Dawson*, 2020 WL 236636, at *2 (Del. Jan. 14, 2020).
[10] Opening Brief at 15.

Family Court's findings and the applicable legal standard. As the Family Court correctly stated, the Guardian was required to establish, by a preponderance of the evidence, that the Child would be dependent, neglected, or abused in the Mother's care. Similarly, the Guardian argues that the Family Court erred by "improperly shifting the burden of proof and persuasion to [the Guardian]."[11] But the Family Court correctly determined that, after the Mother made a preliminary showing that the guardianship was no longer necessary for the reason it was established—namely, by showing that she had established suitable, stable housing, had successfully had the Child in her care during overnight visits, and could assume full-time care of the Child—it was the Guardian's burden to establish either dependency, neglect, or abuse or that the Child would suffer physical or emotional harm.

(11) The Guardian presented evidence that he provided high-quality care for the Child and that the Mother had less involvement than he did during some periods. If the best-interests standard applied in this case, the Guardian's comparison of his involvement with that of another potential caregiver might yield a different result.[12] In this case, however, the Guardian was required to prove either dependency or neglect or that the Child would suffer physical or emotional harm in the Mother's

---

[11] *Id.* at 5.
[12] *See generally Dawson*, 2020 WL 236636, at *2 ("The Family Court . . . appropriately applied the best-interests standard when deciding between competing petitions for guardianship.").

care.  We conclude that the Family Court's determination that the evidence did not rise to that level was sufficiently supported by the evidence in the record.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

_/s/ Tamika R. Montgomery-Reeves_
Justice